ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CHARLES G. GITTENS,

                  Plaintiff,

-against-

MICHAEL J. ASTRUE, Commissioner
of Social Security,

                  Defendant.
------------------------------------------------------X

**REPORT AND RECOMMENDATION**

12 Civ. 3224 (NSR) (GAY)

TO THE HONORABLE NELSON STEPHEN ROMAN, United States District Judge:

Plaintiff Charles Gittens ("plaintiff" or "Mr. Gittens") commenced this action pursuant to 42 U.S.C. § 405(g), challenging the decision by the Commissioner of Social Security ("the Commissioner") to deny plaintiff's application for disability insurance benefits on the ground that plaintiff was not disabled. Presently before this Court are the parties' cross-motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons that follow, I respectfully recommend that plaintiff's motion for judgment on the pleadings be denied and that the Commissioner's motion should be granted.

I.     **BACKGROUND**

Plaintiff is a fifty-nine year-old male (born in 1954) who alleges that he is disabled due to chronic Hepatitis C, glaucoma, and Chronic Obstructive Pulmonary Disease ("COPD"). Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Judgment on the Pleadings, and in Support of the Commissioner's Motion for Judgment on the Pleadings ("Def. Memo in Opp."), at 4. Mr. Gittens worked as a New York City

police officer for twenty years. Id. He tested positive for Hepatitis C during a routine physical examination. Id. Mr. Gittens filed an application for a period of disability and disability insurance benefits on January 7, 2004, alleging an inability to perform any substantial gainful activity due to chronic Hepatitis C, glaucoma, and COPD. Plaintiff's Memorandum of Law in Support of a Motion for Judgment on the Administrative Record and Pleadings Pursuant to Rule 12(c) F.R.C.P. ("Pl. Memo. in Supp't"), at 5. His application was initially denied on June 1, 2004, based on the finding that he could perform sedentary work that required only lifting a maximum of ten pounds, and that he could walk and stand occasionally. Id. Mr. Gittens timely requested a hearing on July 21, 2004. Id. The hearing was held before Administrative Law Judge ("ALJ") Brian W. Lemoine ("ALJ Lemoine") on March 14, 2006. Id. On March 31, 2006, the ALJ issued a decision finding that plaintiff retained the capacity to perform sedentary work within the meaning of 20 CFR § 416.967(a) and therefore was not disabled within the meaning of the Social Security Act. Id. at 5-6.

  Plaintiff then filed a request for review of a hearing decision, which was denied by the Appeals Council. Id. at 6. This denial rendered ALJ Lemoine's decision the final decision of the Commissioner, subject to judicial review. Plaintiff appealed to this Court. See Gittens v. Astrue, 07 civ. 1397 (GAY). By Decision and Order, dated June 23, 2008, this Court found that there was insufficient evidence to support the ALJ's conclusion that a significant number of jobs that plaintiff could perform existed in the nation or local economy. Id. at 6; Def. Memo. in Opp. at 2. Consequently, this Court remanded the case for further proceedings. By Order, dated July 9, 2008, the Appeals Council vacated the ALJ's decision and remanded the case for further proceedings. Def. Memo. in Opp. at 2.

On October 23, 3009, plaintiff and his counsel appeared for another hearing before ALJ Lemoine. Id. During this hearing, plaintiff amended his application to an alleged period of disability from March 3, 2003 to September 5, 2007 because he made a successful return to work on September 5, 2007. Id. at 2-3. The vocational expert testified that there were three occupations that someone with plaintiff's residual functional capacity and transferable skills could perform. Accepting this testimony, ALJ Lemoine issued a decision finding that plaintiff retained the capacity to perform sedentary work within the meaning of 20 CFR § 416.967(a) and therefore was not disabled within the meaning of the Social Security Act. Id. at 3.

Plaintiff then filed a written exception to ALJ Lemoine's decision. The Appeals Council declined to assume jurisdiction, stating that ALJ Lemoine's findings were supported by the record. Pl. Memo. in Supp't at 6; Def. Memo. in Opp. at 3. Plaintiff sought judicial review of his case in this Court. See Gittens v. Astrue, 11 Civ. 2136 (PAC) (DCF). The parties stipulated to a remand. Def. Memo. in Opp. at 3. On August 1, 2011, this Court remanded the matter to the Commission for further proceeding. Id. On October 4, 2011, the Appeals Counsel vacated ALJ Lemoine's decision and remanded for further proceedings to conduct a hearing, where the ALJ will "obtain testimony from another vocational expert to determine if there is work existing in significant numbers in the national economy that the claimant can perform," "take any further action needed to complete the record, and issue a new decision." Tr.[1] 518-19.

On January 31, 2012, a hearing was held before ALJ Katharine Edgell ("ALJ Edgell"). Tr. at 528-67. Plaintiff appeared with his counsel. ALJ Edgell obtained

---

[1] Hereinafter, all citations to "Tr." refer to the Certified Transcript of the Administrative Proceedings.

3

testimony from vocational expert Esperanza DiStefano ("VE DiStefano") regarding the occupations that someone with plaintiff's residual functional capacity and transferable skills could perform. Tr. at 553-67. On February 16, 2012, ALJ Edgell issued a decision finding that plaintiff retained the capacity to perform light work within the meaning of 20 CFR § 404.1567(b); that did not require concentrated exposure to dust, fumes, or other pulmonary irritants. ALJ Edgell also found that plaintiff was capable of performing his past relevant work as a detective, a ceremonial officer, and/or a police instructor; and therefore was not disabled within the meaning of the Social Security Act. Tr. at 499-507.

Plaintiff did not file a written exception to ALJ Edgell's decision, choosing instead to seek judicial review by filing the instant action herein. Thus, ALJ Edgell's decision became the final decision of the Commissioner, subject to judicial review.

## II.   STANDARD OF REVIEW

The Commissioner's factual findings are conclusive if they are supported by substantial evidence. See 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotation and citation omitted). "To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quotation and citation omitted). The reviewing court "may only set aside a determination which is based upon legal error or not supported by substantial evidence." Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998) (quotation and citation omitted).

## III.   STATUTORY DISABILITY

The SSA defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). In addition, a person is eligible for disability benefits under the SSA only if

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). The Second Circuit has adopted a five-step analysis for evaluating disability claims under the SSA:

> First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. Where the claimant is not, the Commissioner next considers whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment that is listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant has a listed impairment, the Commissioner will consider the claimant disabled without considering vocational factors such as age, education, and work experience; the Commissioner presumes that a claimant who is afflicted with a listed impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, she has the residual functional capacity to perform her past work. Finally, if the claimant is unable to perform her past work, the burden then shifts to the Commissioner to determine whether there is other work which the claimant could perform.

Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1999). In determining whether there is other work which the claimant could perform, "the Commissioner must consider four factors:

5

(1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age and work experience." Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (internal quotation and citation omitted).

## IV. ALJ'S DETERMINATION

Here, the ALJ applied the five-step procedure and concluded that plaintiff was not disabled within the meaning of the Act. Tr. at 500. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 31, 2003 through September 5, 2007. Id. at 504. At step two, the ALJ determined that plaintiff suffered from COPD and Hepatitis C, both of which are "severe." Id. At step three, the ALJ concluded that plaintiff did not have an impairment or combination of impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P. Id.

At step four, the ALJ found that from March 31, 2003 through September 5, 2007, plaintiff had the "residual functional capacity to perform light work . . .; that did not require concentrated exposure to dust, fumes, or other pulmonary irritants." Id. She also found that Mr. Gittens was capable of performing his past relevant work as a detective, a ceremonial officer, and/or a police instructor. Id. at 506.

In reaching this conclusion, the ALJ considered the records of Dr. Bezdicek and Dr. Blair who both examined plaintiff on numerous occasions. Tr. at 504, 506. The ALJ also considered records from the VA hospital where Mr. Gittens was referred for possible antiviral therapy in November 2003. Tr. at 389-424, 504, 506. These records show plaintiff complained of occasional fatigue on exertion but no nausea, shortness of breath, abdominal pain, or other symptoms. Id. The ALJ also considered the diagnosis of Dr. Hillel Tobias who examined the plaintiff in April of 2004. Tr. at 506. During his

examination, Dr. Tobias noted complaints of severe malaise, fatigue, myalgias, arthralgias, increased irritability, and inability to concentrate. Tr. at 235. Based on the plaintiff's symptoms and his diagnosis, it was Dr. Tobias' opinion that plaintiff was totally disabled. Tr. at 235, 506. The ALJ also considered the medical records and diagnosis of treating physician Dr. Peter Bezdicek, who examined plaintiff on four separate occasions between April 13, 2004 and May 25, 2005. Tr. at 506, 506. During this time, Dr. Bezdicek diagnosed plaintiff with severe COPD and mild restrictive lung disease. Tr. at 243. Plaintiff denied any chest pain, fever, night sweats, chills, abdominal pain, nausea, dysuria, or hematuria. Id. Plaintiff also denied any headaches, dizziness, coughing, or wheezing. Id. Plaintiff reported that he was able to climb one flight of stairs. Id. Dr. Bezdicek also examined plaintiff's abdomen and found it to be soft with no discernible abnormalities. Id. As treatment, Dr. Bezdicek prescribed an inhaler and recommended that he stop smoking. Tr. at 244. Plaintiff declined this recommended course of treatment.

    The ALJ noted that, with the exception of Dr. Tobias' observations and records, no other medical treating source opined that "claimant had exertional limitations inconsistent with all work activity during the period at issue." Tr. at 506. Doctor Tobias rendered an assessment of "total disability"; however, there was no indication of any treating relationship between him and plaintiff. Id. No clinical findings, other than noting that plaintiff's liver was palpable, supported Dr. Tobias' assessment. Id. Accordingly, the ALJ concluded that Dr. Tobias' statement could not be accorded significant probative weight. Id.

    Furthermore, the ALJ noted that given that plaintiff returned to work at jobs with higher exertional demands than was assessed in his residual functional capacity without

any treatment, he was not as functionally compromised as purported. Tr. at 505. Plaintiff received no hepatitis C treatment, received mild and sporadic treatment for COPD; and was fully neurologically intact. Moreover, plaintiff remained functional with regard to his daily living activities. Id. He was independent in his self-care, drove cars, ran errands, performed house chores such as mowing the lawn with the use of a riding mower, attended church regularly, and traveled by car from New York to Delaware on a number of occasions. Id. at 505-06.

At step five, during the hearing, VE DiStefano characterized the exertional level of plaintiff's relevant past jobs as the following: detective – light exertional level with a special vocational preparation (SVP) rating of 7; ceremonial officer – light exertional level with an SVP of 7; police officer – light exertional level with an SVP of 6; and patrolman – medium exertional level with an SVP of 6. Tr. at 506-07. The ALJ asked VE DiStefano to consider an individual who with plaintiff's retained residual functional capacity to perform light work with a need to avoid concentrated exposure to dust, fumes, or other pulmonary irritants. Id. at 507. VE DiStefano testified that such a person would be capable of performing plaintiff's past relevant work as a detective, a ceremonial officer, and/or a police instructor. Id. at 507, 553-61.

Based on the foregoing, the ALJ concluded that plaintiff was capable of performing his past relevant work as a detective, a ceremonial officer, and/or a police instructor; and as such, was not under a "disability" as defined in the SSA. Tr. at 507.

## V. ANALYSIS

### A. ALJ Edgell's Alleged Legal Error

Upon remand, ALJ Edgell conducted a hearing where plaintiff appeared with his counsel. VE DiStefano testified at the hearing that an individual with plaintiff's retained

residual functional capacity to perform light work with a need to avoid concentrated exposure to dust, fumes, or other pulmonary irritants is capable of performing plaintiff's past relevant work as a detective, a ceremonial officer and/or a police instructor. Plaintiff contends that the ALJ committed legal error by concluding at step four that he could return to his past relevant work and by conducting a hearing involving the five steps because the Appeals Council's remand order limited the issue to be determined by the ALJ to only the fifth step. Pl. Memo. in Supp't at 12-15.

It is well settled that "the Appeals Council may remand a case to an administrative law judge so that he or she may hold a hearing and issue a decision or a recommended decision. . . ." 20 C.F.R. §§ 404.977(a). Upon remand, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." 20 C.F.R. §§ 404.977(b). The ALJ's failure to comply with the Appeals Council's order upon remand constitutes legal error. Savino v. Astrue, No. 07-CV-4233, 2009 WL 2045397, at *9 (E.D.N.Y. July 8, 2009); Scott v. Barnhart, 592 F. Supp.2d 360, 371 (W.D.N.Y. 2009) ("The ALJ's failure to comply with the Appeals Council's order constitutes legal error, and necessitates a remand.") (citations omitted); Mann v. Chater, No. 95 CIV. 2997, 1997 WL 363592, at *1-3 (S.D.N.Y. June 30, 1997) (holding that the case must be remanded when the ALJ did not follow the orders of the Appeals Council).

Here, the Appeals Council issued an order vacating "the final decision of the Commissioner of the Social Security and remand[ing] [the] case to an Administrative Law Judge for further proceedings consistent with the order of the court." Tr. 518. Further, the order provides that upon remand, the ALJ "will obtain testimony from another vocational expert to determine if there is work existing in significant number in

9

the national economy that the claimant can perform." Id. In addition, the ALJ "will offer the claimant the opportunity for a hearing, take any further action needed to complete the administrative record, and issue a new decision." Id.

Contrary to plaintiff's assertion, the Appeals Council's order did not limit the ALJ's determination, upon remand, to the fifth step. Although the order directed the ALJ to obtain testimony from another vocational expert with regard to the fifth step, it also directed the ALJ to conduct a hearing and issue a new decision. In any event, the Appeals Council vacated the previous decisions prior to the remand. As such, ALJ Lemoine's previous decisions had no bearing on the proceedings before ALJ Edgell. See Uffre v. Astrue, No. 06 Civ. 7755, 2008 WL 1792436, at *7 (S.D.N.Y. Apr. 18, 2008) ("Here, the Appeals Council vacated the ALJ's first decision. . . . Thus, the first decision has no bearing on these proceedings.") Furthermore, without an express directive to adhere to the previous ALJ's determinations on steps one through four, ALJ Edgell was free to review the entire case record *de novo* and to reach her own conclusions. Id. ("An ALJ making a decision in a case on remand from the Appeals Council, however, is to consider the case *de novo* when the Appeals Council has vacated the ALJ's previous decision.").

Accordingly, I respectfully conclude that plaintiff's contention regarding the ALJ's alleged legal error is without merit.

### B. ALJ Edgell's Assessment of the Credibility of Plaintiff's Subjective Complaints of Pain

The ALJ found that plaintiff's testimony as to his pain and functional limitation was not totally credible for several reasons. Tr. at 505-06. First, the ALJ noted that plaintiff had only received conservative treatments for Hepatitis C and COPD, a level of

10

treatment inconsistent with plaintiff's allegations of disabling symptoms; continued smoking against medical advice; and was on no medication for Hepatitis C and COPD. Id. Second, she noted that plaintiff was able to return to work at jobs with higher exertional demands than assessed in his residual functional capacity without any treatment. Id. Third, the ALJ noted that plaintiff remained functional with regard to his daily living activities. Id. He was independent in his self-care, drove cars, ran errands, performed house chores such as mowing the lawn with the use of a riding mower, attended church regularly, and traveled by car from New York to Delaware on a number of occasions. Id. The ALJ also went on to contrast plaintiff's alleged disability with the medical evidence in the record. Id.

Plaintiff argues that the ALJ's determination imposed an undue burden on him because it required his allegations to be "well supported" by medical evidence. Pl. Memo. in Supp't at 16-17. Furthermore, plaintiff contends that the ALJ failed to properly assess his credibility because she failed to mention his "long and honorable work history at all in her decision." Id. at 17.

It is within the ALJ's discretion to evaluate plaintiff's credibility "and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." Pardilla v. Apfel, No. 98 Civ. 5357, 2000 WL 145463, at *6 (S.D.N.Y. Feb. 9, 2000). However, "[i]f the ALJ decides to reject subjective testimony concerning pain and other symptoms, [s]he must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether [her] determination is supported by substantial evidence." Lugo v. Apfel, 20 F. Supp.2d 662, 663 (S.D.N.Y. 1998)

(quotation and citations omitted). In order to satisfy the substantial evidence requirement,

> the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments could reasonably be expected to produce the pain or other symptoms alleged. Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.
>
> When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

Brodbeck v. Astrue, No. 05-CV-0257, 2008 WL 681905, at *19 (N.D.N.Y. Mar. 7, 2008) (citing 20 C.F.R. §§ 404.1529(a),(c), 416.929(a),(c)) (other citations and internal quotations omitted).

Here, the ALJ assessed plaintiff's testimony in accordance with the guidelines set forth above. First, he found that the objective evidence alone did not substantiate the intensity, persistence, or limiting effects of the plaintiff's symptoms. The difference in symptoms plaintiff reported to Dr. Tobias and those he reported to Dr. Bezdicek and others required the ALJ to assess the credibility of the plaintiff's subjective complaints. Tr. at 505-06. For example, plaintiff reported to his doctors that he was feeling well with few symptoms. However, Dr. Tobias assessed him as suffering from total disability. Tr. at 506. In assessing plaintiff's credibility, the ALJ specifically addressed his

conservative treatment for both COPD and Hepatitis C; his independence in his self-care; and his wide range of other activities of daily living. Id. at 505. She also noted that plaintiff returned to work at jobs with higher exertional demands than was assessed in his residual functional capacity without any treatment; thus, further supporting the conclusion that he was not as functionally compromised as purported. Id. I conclude, therefore, that the ALJ had legitimate reasons for rejecting plaintiff's subjective testimony and her determination was supported by substantial evidence.

Next, plaintiff's argues that the ALJ failed to mention his "long and honorable work history [ ] in her decision." Pl. Memo. in Supp't at 17. A plaintiff's good work history, while deemed probative of credibility, is not conclusive. Rather, it is one of many factors to be considered in credibility assessments. Astolos v. Astrue, 06-cv-687, 2009 WL 3333234, at *12 (W.D.N.Y. Oct. 14, 2009) ("[A]lthough ALJs are specifically instructed that credibility determinations should take account of 'prior work history,' and a good work history may be deemed probative of credibility, work history is just one factor used to assess the credibility of Plaintiff's subjective complaints.") (internal quotations and citations removed). The ALJ was clearly aware of plaintiff's work history. Accordingly, I conclude that plaintiff's contention regarding the ALJ's assessment of his credibility is without merit.

Consequently, I respectfully recommend that the Court should decline to remand on the basis that the ALJ failed to mention plaintiff's work history.

### C. ALJ's Step Four Determination

Plaintiff avers that the ALJ's step four determination is not supported by substantial evidence. Pl. Memo. in Supp't at 18. Specifically, plaintiff contends that the ALJ made no meaningful development of any of his past relevant work. Id.

Additionally, plaintiff contends that the ALJ did not inquire into the relevant mental and physical demands associated with any of the positions he held. Id. at 18-19. Plaintiff asserts that the ALJ did not state that she compared his residual function capacity with the physical and mental demands of any of his previous jobs. As such, plaintiff contends that the ALJ's step four determination is not supported by substantial evidence. Id.

"[I]n order to determine at step four whether a claimant is able to perform her past work, the ALJ must make a specific and substantial inquiry into the relevant physical and mental demands associated with the claimant's past work, and compare these demands to the claimant's residual capabilities." Kerulo v. Apfel, No. 98 CIV. 7315, 1999 WL 813350, at *8 (S.D.N.Y. Oct. 7, 1999). "An ALJ may rely on the claimant's statements, which 'are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work.'" Schrader v. Astrue, No. 08-cv-119, 2010 WL 5437249, at *8 (N.D.N.Y. Nov. 4, 2010) (citing SSR 82-62). "Adequate documentation" will include "information about those work demands which have a bearing on the medically established limitations." Id.

Here, the ALJ's findings that plaintiff maintains the RFC to perform light work that did not require concentrated exposure to dust, fumes, or other pulmonary irritants; and that plaintiff was capable of performing his past relevant work as a detective, a ceremonial officer, and/or a police instructor is well supported by the record evidence. Tr. at 504. Light work is one that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567(b). As an initial matter, record evidence shows that during his alleged period of disability,

14

plaintiff could lift 30 or 40 pounds, could stand and walk for a period of 15 minutes at a time, and had no difficulty sitting in a chair. Tr. at 545.

Additionally, record evidence demonstrates that the ALJ inquired into the duties involved in plaintiff's relevant past work. See, e.g., Tr. 530 ("Describe for me your vocational skills . . . . You had skills as a police officer of course, right?"); 531 ("So you would solve crimes and do investigations just like TV?"); 532 ("Did you have to also be the driver like a chauffeur?"); 533 ("And before you were that executive detail, what kind of detective work were you doing then?"); 533 ("So what was your special detective work prior to that one year where you drove that city council person around?"); 534 ("And when they promoted you to detective within the ceremonial unit, did you get any additional responsibilities or tasks?"); 534 ("So how many people did you supervise?"); 534 ("did you have to do any report writing ... ?"); 535 ("Did you have to then ... plan for ... security ... ?"); 535 ("what other duties did you have as a coordinator?"); 537 ("did you have any other tools that you used in the ceremonial unit?"). Through such questions, the ALJ was able to determine the duties involved in plaintiff's past relevant work.

Moreover, plaintiff testified that his past relevant work did not involve significant physical demands such as strength demands, standing, walking, pushing, lifting, and carrying. See Tr. at 548 (Q ". . . . But again we're talking about it in terms of your ability to work." A. "Right. No, I wasn't walking." Q. "We're talking about strength demands, walking, standing, sitting, lifting, carrying, pushing, pulling. Those things were never a part of your past relevant work." A. "No."). As to plaintiff's contention that the ALJ failed to inquire into the mental demands of his past relevant work, he does not allege to be suffering from any mental impairment. As such, the ALJ "properly accounted for only

15

[his] physical limitations in her RFC determination. See Murphy v. Astrue, No. 12-cv-6271, 2013 WL 1452054, at *4 (W.D.N.Y. Apr. 09, 2013) (finding that the ALJ "properly accounted for only Plaintiff's physical limitations in her RFC finding," where the plaintiff's anxiety was properly determined not to be a severe mental impairment.).

Accordingly, I respectfully recommend that the Court should reject plaintiff's argument that the ALJ's step four determination that plaintiff could return to his past relevant work as a detective, a ceremonial officer, and/or a police instructor is not supported by substantial evidence.

D. Remand For the Calculation of Benefits

Plaintiff requests that this Court remand this case to the Commissioner solely for the calculation of his benefits. Pl. Memo. in Supp't at 19. Plaintiff argues that he has spent eight years in an attempt to obtain the disability benefits; no evidence has been offered to contradict his subjective medical complaints; and that remanding the case back to the Commissioner "would leave equity bar. Id. at 19-20. Defendant argues that the case should not be remanded solely for the calculation of benefits because such a remand is available only when the record provides evidence of total disability that would render any further proceedings pointless; a condition that is not present here. Def. Memo. in Opp. at 24.

The Court shall appropriately remand a case solely for the calculation of benefits only in cases where the "records provided persuasive evidence of total disability that rendered any further proceedings pointless." See Williams v. Apfel, 204 F.3d 48, 50 (2d Cir. 2000) (citing Rivera v. Schweiker, 717 F.2d 719, 725 (2d Cir. 1983) ("[T]he record fails to reveal any evidence which could support a finding that Rivera was capable of performing substantial gainful work which was available in the national economy."));

Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir.1990) (award of benefits appropriate when there was "infinitesimal likelihood" of employment); Taylor v. Astrue, No. 09-CV-3748, 2012 WL 10384, at *2 (E.D.N.Y. Jan. 3, 2012); Arroyo v. Callahan, 973 F.Supp. 397, 400 (S.D.N.Y. 1997) ("the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose")). Record evidence here does not provide "persuasive evidence" of plaintiff's disability that would render it pointless for this Court to remand this case to the Commissioner for further proceedings. To the contrary, the record evidence supports the ALJ's finding that plaintiff is not disabled under the SSA.

Accordingly, I respectfully conclude that the matter should not be remanded solely for the calculation of benefits.

## VI. CONCLUSION

For all of the foregoing reasons, I conclude, and respectfully recommend, that plaintiff's motion for judgment on the pleadings should be denied, and the Commissioner's cross-motion should be granted.

## VII. NOTICE

Pursuant to 28 U.S.C. §636(b)(1), as amended and Rule 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this Report to file and serve written objections. See Fed. R. Civ. P. 6(e). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Nelson Stephen Roman at the United States District Court, Southern District

17

of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.  See <u>Caidor v. Onondaga County</u>, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Nelson Stephen Roman and not to the undersigned.


Dated:   July 30, 2013            Respectfully Submitted,
         White Plains, New York


                                  _____
                                  GEORGE A. YANTHIS, U.S.M.J.